UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:23-cv-61093-JEM/Becerra

ADIDAS AG, *et al.*,

      Plaintiffs,

vs.

ADIDASNOSKO.COM, *et al.*,

      Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** came before the Court on Plaintiff's Motion for Preliminary Injunction (the "Motion" or "Motion for Preliminary Injunction"). ECF No. [5]. Plaintiffs move for entry of a preliminary injunction against Defendants,[2] pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, the All Writs Act, 28 U.S.C. § 165l(a), and the Court's inherent authority. The undersigned has considered Plaintiffs' Motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

The undersigned convened a hearing on August 17, 2023, at which only counsel for Plaintiffs was present and available to present evidence supporting the Motion. Defendants have not responded to the Motion, nor made any filings in this case, nor have Defendants appeared in

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [11].

[2] Defendants are listed in the Schedule "A" chart provided by Plaintiffs, which lists the Individuals, Business Entities, and Unincorporated Associations that make up all Defendants in this action. *See* ECF Nos. [1] at 28-31.

this matter either individually or through counsel. For the reasons more fully discussed below, it is hereby **RECOMMENDED** that Plaintiff's Motion be **GRANTED.**

I.   BACKGROUND

Plaintiffs own the federally registered trademarks (the "adidas Marks") identified in the Declaration of Mia Nidia Gutierrez. ECF No. [5-2] at 2–4. The adidas Marks are used in connection with the design, manufacture, and distribution of various high-quality goods and merchandise such as footwear, sports and leisure wear, and bags. *See id.*

Defendants, through the various Internet based e-commerce stores operating under the seller identities and domain names identified on Schedule "A" in the Complaint (the "Subject Domain Names"), ECF No. [1] at 28-31), have advertised, promoted, offered for sale, or sold goods bearing or using what Plaintiffs have determined to be counterfeits and infringements of the adidas Marks. *See* ECF No. [5-2] ¶ 13.

Although each Defendant may not copy and infringe each of the adidas Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed at least one of the adidas Marks. ECF Nos. [1-3]; [1-4]; *see also* ECF No. 5-3 ¶ 2.) Defendants are not now, nor have they ever been, authorized or licensed to use the adidas Marks. *See* ECF No. [5-2] ¶¶ 13–15.

Plaintiffs investigated the promotion and sale of counterfeit and infringing versions of Plaintiff's branded and protected products by Defendants. ECF No. [5-2] ¶¶ 13-15. Plaintiffs accessed each of the e-commerce stores operating under Defendants' Subject Domain Names and determined the products were non-genuine, unauthorized versions of Plaintiffs' branded products by observing the pricing, which was below the prices of Plaintiffs' genuine products, and by

observing the style and design of certain product and marking characteristics which were not consistent with Plaintiffs' genuine products. *See id.* at ¶ 14.

On June 8, 2023, Plaintiffs filed their Complaint, ECF No. [1], against Defendants for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement. On June 13, 2023, Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [5]. On July 25, 2023, the Court entered an Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order ("the TRO"), ECF No. [12], and temporarily restrained Defendants from infringing Plaintiffs' Marks at issue. In accordance with the Court's July 25, 2023 TRO, Plaintiffs properly served Defendants with a copy of the Complaint, all filings in this matter, and the Court's July 25, 2023 Order. *See* ECF Nos. [16] – [21].

## II.     LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## III.    ANALYSIS

The declarations Plaintiffs submitted in support of the Motion support the following conclusions of law:

A. Plaintiffs have a strong probability of proving at trial that (1) consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the adidas Marks, and that (2) the products Defendants are selling and promoting for sale are copies of Plaintiffs' products which bear and/or use copies of the adidas Marks;

B. Because of the infringement of the adidas Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiffs' Complaint, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers because it is more likely than not that:

1. Defendants own or control Internet websites, domain names, or website businesses which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiffs' rights; and

2. There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their reputation, and their goodwill as a manufacturer and distributor of quality products if such relief is not issued.

D. The public interest favors issuance of the preliminary injunction to protect Plaintiffs' trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

## IV. RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction, ECF No. [5], be **GRANTED** as follows:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are restrained and enjoined until further Order of this Court as follows:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the adidas Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using the adidas Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the adidas Marks, or any confusingly similar trademarks.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the adidas

Marks, or confusingly similar trademarks, on or in connection with all Internet websites, domain names, or businesses owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names.

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet websites registered, owned, or operated by any Defendant, including the Internet websites operating under the Subject Domain Names.

(4) Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this action, or until further Order of the Court.

(5) Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order.

(6) Upon Plaintiffs' request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiffs the true identities and contact information of those registrants.

(7) The domain name registrars for the Subject Domain Names shall immediately, to the extent not already done, assist in changing the registrar of record for the Subject Domain Names to a holding account with a registrar of Plaintiffs' choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of receipt of this Order, the top-level domain (TLD) registries, for the Subject Domain Names, or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain names which such registries have been notified in writing by Plaintiffs have been or will be dismissed from this action, or as to which Plaintiffs have withdrawn their request to immediately transfer such domain names. Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/Ds35k4m/index.html whereon copies of the Complaint, this Order, and all other documents on file in this action are displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names

to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action shall be displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on lock status by the New Registrar, preventing the modification or deletion of the domains by the New Registrar or Defendants.

(8) This Order shall apply to the Subject Domain Names, associated websites, and any other domain names, websites which are being used by Defendants for the purpose of counterfeiting Plaintiffs' Marks at issue in this action and/or unfairly competing with Plaintiffs.

(9) As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action or as to which Plaintiffs have withdrawn their request for a preliminary injunction.

(10) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain their previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(11) This Order shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated to by the parties.

**V.   OBJECTIONS**

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court for the Southern District of Florida, within **THREE (3) DAYS** of being served with a copy of this Report and Recommendation. The undersigned has shortened the objection period because Defendants have not made any appearance in this lawsuit.

Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on August 17, 2023.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**