UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61093-MARTINEZ/VALLE

ADIDAS AG, *et al.*,

     Plaintiffs,

v.

ADIDASNOSKO.COM, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiffs' Motion for Entry of Final Default Judgment Against Defendants (ECF No. 36) ("Motion"). United States District Judge Jose E. Martinez referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 38). Upon review of the Motion, supporting declarations, and the record in this matter, the undersigned recommends that Plaintiffs' Motion be **GRANTED**.

## I.     BACKGROUND

### A. Plaintiff's Claims

Plaintiffs, adidas AG, adidas International Marketing B.V., and adidas America, Inc. (collectively "adidas" or "Plaintiffs"), seek entry of a default final judgment against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" of the Complaint and Motion. *See* (ECF Nos. 1 at 28-31, 36 at 21-24). adidas is the owner of multiple trademark registrations for the adidas Marks (as defined in the Declaration of Mia Nidia Gutierrez (ECF No. 36-2) (the "Gutierrez Declaration"). The adidas Marks are used in

conjunction with the design, manufacture, and distribution of goods as identified in the categories listed in the Complaint. *See generally* (ECF No. 1 ¶ 20); Gutierrez Declaration ¶ 5.

According to Plaintiff's Complaint, the adidas Group learned Defendants are promoting, advertising, offering for sale and/or selling goods using counterfeit and infringing trademarks that are exact copies of one or more of the adidas Marks, without authorization, via at least the commercial Internet websites operating under their domain names set forth on the Subject Domain Names (as defined in the Gutierrez Declaration ¶ 13). *See* (ECF No. 1 ¶¶ 28, 29). adidas alleges that Defendants do not have, nor have they ever had, the right or authority to use the adidas Marks. *See* (ECF No. 1 ¶ 30); Gutierrez Declaration ¶ 13. Further, the adidas Marks have never been assigned or licensed to be used on any of the websites operating under the Subject Domain Names. *See* (ECF No. 1 ¶¶ 26, 39); Gutierrez Declaration ¶ 13.

In the Complaint and the instant Motion, Plaintiffs request that the Court: (i) cancel, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs; (ii) permanently disable, delist or deindex the uniform resource locators ("URLs") of the domain names at issue; (iii) require the service providers cease providing services and/or services to the Subject Domain Names; and (iv) require Defendants, their agents or assigns to (a) assign all rights, title and interest to their Subject Domain Names to Plaintiffs; and (b) instruct all search engines and service providers to permanently delist or deindex the Subject Domain Names at issue to ensure the associated websites may no longer be used as a means for selling goods bearing and/or using counterfeits and infringements of Plaintiffs' trademarks and  infringing upon Plaintiffs' rights. *See* (ECF Nos. 1 ¶ 82, 36 at 1-2).

**B. Procedural Background**

On June 8, 2023, Plaintiffs filed their Complaint for Injunctive Relief and Damages against Defendants. *See* (ECF No. 1). On June 13, 2023, Plaintiffs filed the *Ex Parte* Motion for Order Authorizing Alternate Service of Process (ECF No. 6), which the Court granted on June 29, 2023. (ECF No. 8). On July 27th and 28th, 2023, Plaintiffs served each Defendant with a Summons and a copy of the Complaint via electronic mail and website posting. (ECF No. 30) (Proof of Service); *see also* (ECF No. 36-4 ¶ 5) ("Gigante Declaration").

To date, Defendants have failed to answer or otherwise respond to the Complaint, and the time allowed for Defendants to respond to the Complaint has expired. Gigante Declaration ¶¶ 6-7. To Plaintiffs' knowledge, Defendants are not infants or incompetent persons, and the Servicemembers Civil Relief Act does not apply. *Id.* ¶ 8. On September 13, 2023, Plaintiffs filed a Motion for Clerk's Entry of Default, which the Clerk entered on September 14, 2023. (ECF Nos. 34, 35). The instant Motion followed.

## II. LEGAL STANDARD

A party may apply to the Court for a default judgment when the defendant fails to timely respond to a pleading. Fed. R. Civ. P. 55(b)(2). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotations omitted) (quoting *Nishimatsu. Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975)). However, conclusions of law are to be determined by the court. *Mierzwicki v. CAB Asset Mngmt. LLC*, No. 14-CV-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014) (citation omitted).

Therefore, a court may only enter a default judgment if there is a "sufficient basis to state a claim." *Id.*

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See SEC v. Smyth,* 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express*, 336 F. Supp. 2d at 1217 (finding evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Group S.p.A. v. Casa Los Martinez Corp.*, No. 14-CV-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

## III.   DISCUSSION

### A.   Plaintiffs Have Sufficiently Pled Their Claims

The Complaint asserts five claims against Defendants: (i) trademark counterfeiting and infringement under § 32 of the Lanham Act, in violation of 15 U.S.C. § 1114 (Count 1); (ii) false designation of origin under § 43(a) of the Lanham Act, in violation of 15 U.S.C. § 1125(a) (Count 2); (iii) cybersquatting under § 43(d) of the Lanham Act, in violation of 15 U.S.C. § 1125(d) (Count 3);[1] (iv) unfair competition under Florida common law (Count 4); and (v) trademark infringement under Florida common law (Count 5). *See* (ECF No. 1 ¶¶ 49-81).

---

[1] Count 3 asserts claims only against Defendants Number 1-11. (ECF No. 1 ¶¶64-70).

*1.      Trademark Counterfeiting and Infringement Under the Lanham Act (Count 1)*

Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion, or to cause mistake, or to deceive." *PetMed Express*, 336 F. Supp. 2d at 1217-18 (citations omitted). Thus, to prevail on a trademark infringement claim, a plaintiff must demonstrate that: (i) its mark has priority; (ii) defendant used its mark in commerce; and (iii) defendant's mark is likely to cause consumer confusion. *Id.* Additionally, the analysis of liability for Florida common law trademark infringement (as alleged in Count 5) is the same as under the Lanham Act. *Id.* (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)).

As to Count 1, Plaintiffs allege that:

51. [D]efendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using counterfeits and/or infringements of one or more of the adidas Marks. Defendants are continuously infringing and inducing others to infringe the adidas Marks by using one or more of [them] to advertise, promote, offer to sell, and/or sell counterfeit and infringing versions of Plaintiffs' branded goods.

52. Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

53. Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

\* \* \*

55. [P]laintiffs have suffered and will continue to suffer irreparable injury because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

(ECF No. 1 ¶¶ 51-55); *see also Id.* ¶¶ 57-61 (alleging false designation of origin in Count 2); *Id.* ¶¶ 77-81 (alleging common law trademark infringement in Count 5).

Based on these allegations, which are admitted upon Defendants' default, Plaintiffs have satisfied the elements to establish a claim for federal and common law trademark infringement as alleged in Counts 1 and 5.

2.      *False Designation of Origin Pursuant to § 43(a) of the Lanham Act (Count 2)*

Section 43(a) of the Lanham Act makes it unlawful for "[a]ny person . . . in commercial advertising or promotion, [to] misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).   To state a claim under § 43 of the Lanham Act, a plaintiff must show that: (i) the defendant's statements were false or misleading; (ii) the statements deceived, or had the capacity to deceive, consumers; (iii) the deception had a material effect on the consumers' purchasing decision; (iv) the misrepresented service affected interstate commerce; and (v) it has been, or likely will be, injured as a result of the false or misleading statement. *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

As to Count 2, Plaintiffs allege that:

59. Defendants have used in connection with their advertisement, offer for sale, and sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or symbols [that] falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

60. Defendants have each authorized infringing uses of one or more of the adidas Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have misrepresented to members of

6

the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

61. Additionally, many Defendants are simultaneously using counterfeits and infringements of the adidas Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Plaintiffs of valuable marketing and educational space online which would otherwise be available to Plaintiffs, and (ii) reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, and across social media platforms.

***

63. Plaintiffs have no adequate remedy at law. [Further,] Plaintiffs have suffered and will continue to suffer both individual and indivisible injury caused by Defendants' concurrent conduct if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

(ECF No. 1 ¶¶ 59-63).

Based on these allegations, which are admitted upon Defendants' default, Plaintiffs have satisfied the elements to establish a claim for false designation of origin under the Lanham Act as alleged in Count 2.

### 3.     Cybersquatting (Count 3)

The Anti-Cybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that[:] (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *See Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citation omitted).

As to Count 3, Plaintiffs allege that as to Defendants 1-11 (the "Cybersquatting Defendants") only:

> 65. The Cybersquatting Defendants have acted with the bad faith intent to profit from the adidas Marks and the goodwill associated with the adidas Marks by registering and using the Cybersquatted Domain Names.
>
> 66. The adidas Marks were distinctive and famous at the time Cybersquatting Defendants registered the Cybersquatted Domain Names.
>
> 67. The Cybersquatted Domain Names are identical to, confusingly similar to or dilutive of at least one of the adidas Marks.
>
> 68. The Cybersquatting Defendants' conduct is done with knowledge and constitutes a willful violation of Plaintiffs' rights in the adidas Marks. At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Plaintiffs' rights.
>
> ***
>
> 70. Plaintiffs have no adequate remedy at law. Plaintiffs have suffered and will continue to suffer irreparable injury due to the Cybersquatting Defendants' activities if the Cybersquatting Defendants not preliminarily and permanently enjoined. Additionally, the Cybersquatting Defendants will continue to wrongfully profit from their illegal activities.

(ECF No. 1 ¶¶ 65-70).

Based on these allegations, which are admitted upon Defendants' default, Plaintiffs have satisfied the elements to establish a claim for cybersquatting in violation of § 43(d) of the Lanham Act as alleged in Count 3 as to the Cybersquatting Defendants.

4.      *Florida Common Law Unfair Competition (Count 4)*

Under Florida law, the determining factor in the analysis of unfair competition is whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-CV-8381, 1986 WL 15668, at *4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' . . . . The proper test is 'likelihood of confusion[.]'").

As to Count 4, Plaintiffs allege that:

72. This is an action against Defendants based on their[:] (i) promotion, advertisement, distribution, [sale and/or] offering for sale of goods using or bearing marks that are virtually identical to one or more of the adidas Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Plaintiffs sell their genuine goods, in violation of Florida's common law of unfair competition.

73. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and/or distributing goods using counterfeits and infringements of one or more of the adidas Marks. Defendants are also using counterfeits and infringements of one or more of the adidas Marks to unfairly compete with Plaintiffs for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

74. Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' websites as a whole and all products sold therein by their use of the adidas Marks.

75. Plaintiffs have no adequate remedy at law. Plaintiff have suffered and will continue to suffer irreparable injury because of Defendants' [] activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongly profit from their activities.

(ECF No. 1 ¶¶ 72-75).

Based on these allegations, which are admitted upon Defendants' default, Plaintiffs have satisfied the elements to establish a claim for unfair competition under Florida common law as alleged in Count 4.

*5.      Florida Common Law Trademark Infringement (Count 5)*

The analysis of liability for Florida common law trademark infringement under Count 5 is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act in Count 1. *See PetMed Express,* 336 F. Supp. 2d at 1217-18. Accordingly, Plaintiffs have satisfied the elements to establish a claim for Florida common law trademark infringement. *See* supra Section III.A.1.

## B.   Plaintiffs Are Entitled to Relief

Plaintiffs request injunctive relief and statutory damages against Defendants for trademark infringement under Count 1.  (ECF No. 36 at 8-16).  As to Counts 2, 4, and 5, Plaintiffs limit their request for damages to the equitable and monetary damages awarded pursuant to Count 1.  *Id.* at 17, 19.  Nevertheless, as discussed further below, Plaintiffs seek additional monetary damages under Count 3 (Cybersquatting).  *Id.* at 14-16.

### 1.   *Injunctive Relief as to Count 1*

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (alteration in original) (citation omitted).  Injunctive relief is available even in the default judgment setting, *see, e.g., PetMed Express,* 336 F. Supp. 2d at 1222-23, because a defendant's failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction.  *See, e.g., Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (i) it has suffered irreparable injury; (ii) there is no adequate remedy at law; (iii) the balance of hardship favors an equitable remedy; and (iv) an issuance of an injunction is in the public's interest.  *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006).  Here, Plaintiffs have carried

10

their burden on each of the four factors.  Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [plaintiff's] business reputation and decrease its legitimate sales.").  Plaintiffs' Complaint and the supporting declarations show that the goods produced and sold by Defendants are nearly identical to Plaintiffs' genuine products, and consumers viewing Defendants' counterfeit goods post-sale would confuse them for Plaintiffs' genuine products. *See, e.g.*, (ECF No. 1 ¶ 29) ("Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' goods are genuine goods originating from, associated with, and/or approved by Plaintiffs"); ¶ 36 ("Defendants' . . . infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.").  Plaintiffs have no adequate remedy at law as long as Defendants continue to operate the Subject Domain Names because Plaintiffs cannot control the quality of what appears to be their products in the marketplace.  An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill if Defendants' infringing and counterfeiting continue.  Moreover, Plaintiffs face hardship from loss of sales and its inability to control its reputation in the marketplace.  Conversely, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks, to which they have no right.  Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products, and potentially harmed by their inferior

quality. *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."); *see also World Wrestling Entm't, Inc. v. Thomas*, No. 12-CV-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr.11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).

Moreover, broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case.") (alterations added; citation and quotation marks omitted)); *United States v. Bausch & Lomb Optical Co*., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.") (citations omitted)).   Accordingly, District Courts may order the transfer or surrender of domain names in an *in rem* action against a domain name. *See* 15 U.S.C. §§ 1125(d)(1)(C), (d)(2).   However, courts have not limited the remedy to that context.   *See, e.g., Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting 15 U.S.C. § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering defendants to disclose all other

domain registrations they held and to transfer registration of a particular domain name to plaintiff partly under authority of 15 U.S.C. § 1116(a)). Indeed, this Court and other courts in this District have ordered the transfer of domain names under similar scenarios.[2]

Defendants have created an internet-based counterfeiting scheme through which they are profiting from their deliberate misappropriation of Plaintiffs' rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities. Ordering the cancellation or transfer of the Subject Domain Names to Plaintiffs, assigning all rights, title, and interest to the Subject Domain Names to Plaintiffs, permanently delisting or deindexing the Subject Domain Names and corresponding website URLs from any internet search engine, and permanently closing the domain registration accounts in which the Subject Domain Names are located, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods, are appropriate remedies to achieve this end. Accordingly, Plaintiffs should be awarded injunctive relief as sought in Count 1.

>    2.    *Statutory Damages for Counts 1, 2, 4, and 5*

In Count 1, Plaintiffs also seek statutory damages under 15 U.S.C. § 1117(c). Pursuant to § 1117(c), a plaintiff may elect an award of statutory damages at any time before final judgment

---

[2] *See e.g., Chanel, Inc. v. The Individuals, Business Entities, & Unincorporated Ass'ns,* No. 22-CV-60194-JEM (S.D. Fla. March 15, 2023) (ECF No. 55) (order requiring, inter alia, transfer of domains to plaintiff); *see also Vineyard Vines, LLC v. Individuals, Business Entities, & Unincorporated Ass'ns Identified on Schedule "A,"* No. 21-CV-61991-KMW (S.D. Fla. Dec. 21, 2021) (ECF No. 42) (ordering, inter alia: (i) transfer of domain names at issue as part of grant of permanent injunction; (ii) assignment of all rights, title, and interest to defendants' domain names used to promote, offer for sale, and/or sell goods bearing counterfeits and/or infringements of plaintiff's trademarks to plaintiff; and (iii) permanent de-indexing or delisting of defendants' domain names from internet search engines); *Malletier v. Aaalvsale.com*, No. 21-CV-60790-BB, 2021 U.S. Dist. LEXIS 81124 (S.D. Fla. Apr. 28, 2021) (same); *Louis Vuitton Malletier v. aaalvshop.com*, No. 19-CV-61986-RAR, 2019 U.S. Dist. LEXIS 223653 (S.D. Fla. Nov. 21, 2019) (same).

in the sum of not less than $1,000 nor more than $200,000 per counterfeit mark per type of good.

15 U.S.C. § 1117(c)(1).  Additionally, if the Court finds that Defendants' counterfeiting actions

were willful, it may impose damages above the maximum limit up to $2,000,000 per mark per

type of good.  15 U.S.C. § 1117(c)(2).

The Court has wide discretion to set an amount of statutory damages. *PetMed Express*,

336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d

829, 852 (11th Cir. 1990)).  Indeed, an award of statutory damages is an appropriate remedy,

despite a plaintiff's inability to provide actual damages caused by a defendant's infringement.

*Ford*, 441 F. Supp. 2d at 852 ("[A] successful plaintiff in a trademark infringement case is

entitled to recover enhanced statutory damages even where its actual damages are nominal or

non-existent."); *see also PetMed Express*, 336 F. Supp. 2d at 1220 (statutory damages are

"especially appropriate in default judgment cases due to infringer nondisclosure").

Moreover, a defendant's intent can be evidence of willfulness, triggering an enhanced

statutory award.  *Id*.  A defendant is deemed to have acted willfully where "the infringer acted

with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights.  *See*

*Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003).

Willfulness may also be inferred from the defendant's default.  *See PetMed Express*, 336

F. Supp. 2d at 1217 (upon default, well plead allegations taken as true); *Arista Records,* 298

F. Supp. 2d at 1313 (finding a court may infer willfulness from the defendants' default).  Here,

the evidence establishes that Defendants intentionally copied the adidas Marks for the purpose of

deriving the benefit of Plaintiffs' world-famous reputation.  Defendants have also defaulted on

Plaintiffs' allegations of willfulness.  *See, e.g.,* (ECF No. 1 ¶ 35) ("Defendants are engaging in

the [] illegal counterfeiting and infringing activities knowingly and intentionally or with reckless

disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputations.").

Here, Plaintiffs request a statutory damage award of $100,000 per mark, per type of good. (ECF No. 36 at 16).  This Court and other courts in this District have granted similar statutory damages under the Lanham Act.[3]  Accordingly, the undersigned recommends that the District Court award statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.  Lastly, the damages for Counts 2, 4, and 5 should be limited to the same equitable and statutory damages awarded under Count 1.

   *3.    Statutory Damages for Count 3*

As to Count 3 (Cybersquatting), Plaintiffs seek additional monetary damages.  More specifically, upon a finding of liability, the ACPA empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c).  Plaintiffs may also elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000 and not more than $100,000 per domain name, as the Court considers just.  15 U.S.C. § 1117(d).

Here, Plaintiffs elect statutory damages and submit that in view of the Cybersquatting Defendants' intentional, wrongful behavior, an award in the amount of $10,000 against each of the Cybersquatting Defendants for each of their respective Cybersquatted Domain Names, as outlined on Schedule "B" of the Motion, would be just.  (ECF No. 36 at 19).  The undersigned

---

[3] *See e.g., Chanel,* No. 22-CV-60194-JEM (ECF Nos. 51, 55) (adopting Magistrate Judge's recommendation to award $100,000 in statutory damages per defendant); *Chanel, Inc. v. Designerreplicachanel.com*, No. 17-CV-62048-KMW, 2018 U.S. Dist. LEXIS 227392 (S.D. Fla. Aug. 22, 2018) (awarding plaintiff $1,000,000 against each defendant); *Vineyard Vines,* 21-CV-61991-KMW (ECF No. 41 at 4) (same); *Richemont Int'l*, No. 19-CV-62897-KMW (S.D. Fla. May 15, 2020) (ECF No. 48 at 4) (same); *Chanel*, 2018 U.S. Dist. LEXIS 227392, at *4 (same).

agrees and recommends that the District Court award statutory damages, under Count 3 for Cybersquatting.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned respectfully recommends that Plaintiffs' Motion for Entry of Final Default against Defendants (ECF No. 36) be **GRANTED.**  The Court should enter a Default Final Judgment and Permanent Injunction as proposed in ECF No. 36-1.

Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2023); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida on May 15, 2022.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Jose E. Martinez
     All Counsel of Record